JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
JINSHU ZHANG (Bar No. 166981)
john.zhang@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:    (213) 623-9300
Facsimile:    (213) 623-9924
Attorneys for Debtor,

*Proposed* Attorneys for Debtor and
Debtor-in-Possession, AVIC International USA Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-19043-WB |
| AVIC INTERNATIONAL USA INC., | Chapter 11 |
| Debtor and Debtor in Possession. | [Voluntary Petition Filed: October 5, 2020] |
| | **DECLARATION OF JINSHU ZHANG IN SUPPORT OF MOTIONS AND APPLICATIONS TO BE FILED ON BEHALF OF THE DEBTOR** |
| | [HEARING TO BE SCHEDULED BY NOTICED MOTIONS AND APPLICATIONS] |
| | Judge: Hon. Julia W. Brand |

I, Jinshu Zhang, declare, that if called as a witness, I would and could competently testify thereto, of my own personal knowledge as follows:

1. I am a partner of the law firm Dentons US LLP. I make this declaration based upon my review of the filings and rulings made in the dispute between AVIC International USA, Inc. (the "***Debtor***"), on the one side, and Soaring Wind Energy L.L.C. and certain other parties, on the other side, and if called as a witness, I could and would testify competently to those facts. This declaration is filed in support of various motions to be filed by the Debtor, including the application on the employment of counsel for the Debtor and the motion on the employment of the Debtor's accountant as an Ordinary Course Professional.

1

115705706\V-1

2.  ***Factual History***

2.1   Around 2007, the Debtor's president, Xuming "Sherman" Zhang ("***Xuming Zhang***"), started to consider expansion of the Debtor beyond property investments into wind energy opportunities in the United States because of strong demand in the U.S. and supply capabilities in China.

2.2   Xuming Zhang met Patrick Jenevein ("***Jenevein***"), a partner in HT Blade, a wind turbine and blade manufacturer, and the principal of Tang Energy Group, Limited ("***Tang***"). In late 2007, Xuming Zhang pitched Jenevein on a sourcing strategy to bring equipment into the US market.

2.3   Later in 2008, the Debtor, Paul Thompson ("***Thompson***"), Tang, Jan Family Interests, Limited ("***Jan***"); The Nolan Group, Incorporated ("***Nolan***"), Mitchell W. Carter ("***Carter***"), and Keith P. Young ("***Young***") (Tang, Jan, Nolan, Carter and Young collectively, the "***Tang Claimants***") entered into the Limited Liability Company Agreement of Soaring Wind Energy, LLC (the "***Soaring Wind Agreement***") and formed Soaring Wind Energy, LLC, a Delaware limited liability company.  The Debtor (also referred to herein as "***AVIC USA***") had a 50% interest in Soaring Wind and the Tang Claimants collectively hold the other 50%.

2.4   The Soaring Wind Agreement included certain exclusivity provisions which form the primary basis of the underlying dispute. Article 6.10 outlines a requirement that Soaring Wind's members "only conduct activities constituting the Business in and through the Company and its Controlled subsidiaries." Article 6.12 further explains: "each of the Class A Members hereby covenant and agree that neither they nor their Affiliates or Representatives will participate in wind farm land development projects (each a 'Project') except through an entity owned by both the Company and [AVIC USA]…" Under the Soaring Wind Agreement, "Affiliate" "means with respect to any Person, any other Person that directly or indirectly Controls, is Controlled by, or is under the common Control with that first Person."

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

2

115705706\V-1

2.5	The Soaring Wind Agreement also contains detailed provisions to resolve any disputes among members for "any controversy, dispute or claim arising under or related to [the] Agreement."

3.	***Deterioration of the Parties' Relationship***

3.1	The Soaring Wind members held divergent perspectives on its operation. Jenevein, Tang's principal, thought Soaring Wind was meant to operate with Tang bringing wind farm development projects to AVIC USA to be funded. AVIC USA's perspective saw Soaring Wind focused on marketing projects, not large scale investments in wind farms.

3.2	Meanwhile, AVIC International Renewable Energy ("*AVIC IRE*") — not a member of Soaring Wind — created a subsidiary called Ascendant Renewable Energy Corporation ("*Ascendant*") to develop wind projects and tasked Thompson to lead the new entity. AVIC USA did not have any involvement with the formation of Ascendant. Jenevein was not concerned with Thompson's transition to Ascendant and did not view the transition as a breach of the Soaring Wind Agreement. Even though Jenevein knew that Thompson was in talks to develop wind projects through Ascendant, Jenevein assumed the projects would return to Soaring Wind.

3.3	Nothing required AVIC USA to fund any projects, and through 2013, not one project had been funded. Jenevein was dissatisfied and pushed for additional support. In response to such a request, Jenevein received an email (translated from Chinese to English) from AVIC IRE Vice President Xu Hang that suggested AVIC IRE "ha[d] already provided a total of [$]50 million in financing to [*sic*.] wind power projects in the US and will keeping [*sic*.] trying in the future."

3.4	Tang, acting on behalf of all the Tang Claimants, demanded an arbitration based on the purported activities of AVIC IRE, which Tang claimed was an alter-ego of AVIC USA, contending it competed with Soaring Wind in violation of the exclusivity provisions in the Soaring Wind Agreement. There was no allegation that AVIC USA itself violated the Agreement's exclusivity provisions.

3

115705706\V-1

4. ***The Arbitration***

4.1    On June 13, 2014, Tang filed a notice and demanded arbitration, insisting it also acted on behalf of Soaring Wind and its other members (the "***Tang Claimants***"). The demand was initiated not only against AVIC USA and Thompson, but also various other entities which were not parties to the Soaring Wind Agreement (the "***Non-Signatories***"). In their demand notice, the Tang Claimants, acting through Tang, named one arbitrator.

4.2    Shortly thereafter, and without providing notice as required in the Agreement, Nolan, Young, Carter, and Jan also named arbitrators. AVIC USA and Thompson each chose one arbitrator and the panel, already controlled by a supermajority chosen by the Tang Claimants, chose two additional arbitrators.

4.3    Before the arbitration hearing, AVIC USA and Thompson filed an action in the U.S. district court located in Dallas challenging the formation of the arbitration panel, while Ascendant filed a separate action challenging its inclusion in the arbitration.

4.4    AVIC USA and Thompson argued that the stacked arbitration panel as selected was "inherently unfair and not neutral" because the Soaring Wind Agreement provided that each side to a dispute [(1) Tang, who had filed on behalf of itself, Soaring Wind, and the other members, and (2) AVIC USA] would pick an arbitrator, and then the chosen arbitrators would select a neutral arbitrator as chair.

4.5    The District Court dismissed the case, finding that AVIC USA and Thompson's challenge did not satisfy the narrow requirements for judicial review of arbitration proceedings before award issuance. On appeal, the Fifth Circuit affirmed the District Court in a *per curiam* opinion holding that the challenge to the panel composition was premature, while also concluding in dicta AVIC USA failed to show a lapse in the selection process.

4.6    In its action, Ascendant argued that as a non-signatory to the Agreement, the arbitration panel had no jurisdiction over it and thus Ascendant had no obligation to participate. Tang insisted Ascendant was subject to the arbitration clause of the Soaring Wind Agreement simply because it had claimed liability based on an alter-ego theory. The District

4

115705706\V-1

Court explained that "[when] the very existence of any agreement [to arbitrate] is disputed, it is for the courts to decide at the outset whether an agreement was reached." The District Court ruled in favor of Ascendant, declaring that no decision by the arbitration panel "as to jurisdiction over or party-status of Ascendant is controlling on a court." The Ascendant decision was not appealed.

4.7   The arbitration panel held hearings in Dallas, Texas August 10-14, 2015. Not surprisingly, all five arbitrators selected directly by Tang and a sixth arbitrator selected indirectly by Tang voted in lockstep in the Tang Claimant's favor. The remaining three arbitrators dissented to the award in its entirety.

5.   *The Arbitration Award*

5.1   The arbitration panel found that "AVIC USA itself did not violate the contractual provision to refrain from engaging in the Business of [Soaring Wind] except through [Soaring Wind]." Instead, the award hinges entirely on the Tang-selected arbitrators' determination that the Non-Signatories were subject to the Soaring Wind Agreement (and thus also the arbitration) as AVIC USA's alter egos. This decision is foundational — all of the arbitration panel's other conclusions flow from this decision — despite that this critical decision was not ultimately the arbitration panel's to make.

5.2   Having determined that AVIC USA was the alter ego of all the Non-Signatory entities, the arbitration panel found that the Non-Signatories were properly served with discovery orders by the panel. Because the Non-Signatories refused to produce documents as ordered, the panel zeroed in on the one email from Xu Hang that suggested AVIC IRE had invested $50 million in wind power projects in the United States and drew an adverse inference that it was evidence of breach of the exclusivity provisions of the Agreement and "accurate without any additional evidence" (the Non-Signatories "refusal to participate in discovery, except when [they] felt it was to their benefit, prevented Claimants from getting the information to prove X, Y, and/or Z. As a result, the panel has opted to infer…"). The panel also implicitly inferred that the activity described in Hang's email was conduct prohibited by the Soaring Wind Agreement.

5

115705706\V-1

6. ***Award Confirmation Proceedings.***

    6.1    Proceedings Before the District Court

        6.1.1    Soaring Wind moved to confirm the arbitration award against AVIC USA and the Non-Signatories in the United States District Court for the Northern District of Texas. On August 9, 2018, the District Court sua sponte severed the motion to confirm the arbitration award as to the Non-Signatories and stayed those proceedings, while confirming the award as to AVIC USA only (despite that the award was based upon alleged conduct of the Non-Signatories). By severing the dispute, the District Court never reached the issue of whether the Non-Signatories were alter-egos of AVIC USA and properly subject to the arbitration. AVIC USA timely appealed.

    6.2    Proceedings Before the Fifth Circuit

        6.2.1    AVIC USA challenged the District Court's order confirming the arbitration award in the United States Court of Appeals for the Fifth Circuit. Immediately upon appeal, the Fifth Circuit asked "that the parties address federal subject-matter jurisdiction under either complete diversity or the New York Convention…"

        6.2.2    The Fifth Circuit found that while complete diversity was lacking, jurisdiction was proper under the New York Convention. The Court concluded that, although the "Agreement makes explicit reference neither to China nor to any Chinese citizen, nor even to any foreign place or entity," jurisdiction was appropriate because the Agreement also provided a restriction on competition by unnamed, non-party "affiliates" to the signatories and the parties were aware that some of those entities were residents of China.

        6.2.3    Next the Fifth Circuit found that the arbitration panel was appropriately constituted because the Soaring Wind Agreement provided for a panel established by "Disputing Members" not "sides." In so holding, the Fifth Circuit did not address the fact that the Tang Claimants had represented themselves as one, had

6

filed the demand as one, and had coordinated on arbitrator selection and litigation funding. Moreover, the Fifth Circuit seemingly concluded that no amount disparity in arbitration panel appointment would warrant court intervention.

6.2.4    Finally, the Fifth Circuit found sufficient evidence to uphold the arbitration award. Although the Court claimed this was based upon evidence beyond the adverse inference, it based the entire upholding of the award on the AVIC IRE email referenced above and online "evidence" of Non-Signatory projects about which the panel had made assumptions that were unrebutted by the absent Non-Signatories.

6.2.5    AVIC USA filed for an *en banc* rehearing, which was denied, and thereafter, on July 6, 2020, AVIC USA filed a petition to the United States Supreme Court for a writ of certiorari, which was denied on October 19, 2020.

7.    ***Enforcement Actions***

7.1    The arbitration award was confirmed as to the Debtor only by the United States District Court for the Northern District of Texas in a judgment entered on August 9, 2018 and amended on September 17, 2018 (the "***Dallas Judgment***"). The Dallas Judgment confirmed the award to Soaring Wind of damages against the Debtor in the total amount of $62,900,000, less the Debtor's capital contribution of $350,000 in Soaring Wind, the award to Tang against the Debtor of legal fees and expenses and the divestiture of the Debtor's interest in Soaring Wind.

7.2    On December 14, 2018, the Debtor filed a motion to stay with the District Court. On May 3, 2019, the District Court stayed any further discovery in this case as well as any pending motions.

7.3    On February 4, 2020, after the Debtor lost its appeal of the Dallas Judgment to the Fifth Circuit, the Tang Claimants filed a Motion to Lift Stay of Proceedings and for Ruling on Pending Motion to Register the Judgment.

7.4    On February 24, 2020, the District Court lifted the stay of the case.

7.5    On June 1, 2020, the District Court issued a writ of execution as to the Debtor.

7

115705706\V-1

      7.6      On August 10, 2020, the District Court granted plaintiffs' motion for turnover of assets and the Debtor was ordered to "turn over all of its nonexempt property (including property located outside of Texas), including but not limited to membership interests in other limited liability companies, real property deeds, title documents pertaining to personal property, and cash, and all records sufficient to identify and establish ownership of its non-exempt property, including but not limited to documents evidencing membership interests in other limited liability companies, documents reflecting ownership of cash equivalents, or other personal property, to the United States Marshal for the Northern District of Texas… on or before twenty-one (21) days after entry of this order."

      7.7      On September 28, 2020, the judgment creditors filed a motion for order to show cause to require the Debtor to show cause why it should not be sanctioned or held in contempt for failing to comply with the August 10, 2020 turnover order.

8.      On October 5, 2020, the Debtor filed this Chapter 11 case.

9.      ***The Illegal Recording Case***

      9.1      In January 29, 2016, the Debtor and its CEO Xuming Zhang filed a lawsuit in the California state court against E. Patrick Jenevein III ("***Jenevein***"), a principal of Tang, for two causes of action arising from Jenevein's alleged illegal recording of his conversations with Xuming Zhang and presenting such recording at the Dallas arbitration against the Debtor. The first cause of action, asserted by both the Debtor and Xuming Zhang, alleged violations of California Penal Code section 632 that prohibited illegal recording. The second cause of action, asserted by Xuming Zhang alone under the common law, alleged invasion of privacy.

      9.2      Jenevein filed an anti-SLAPP motion to strike pursuant to California Code of Civil Procedure section 425.16 on April 13, 2016.

      9.3      The trial court denied Jenevein's motion on December 12, 2016.

      9.4      On appeal, the California Court of Appeal confirmed the trial court's ruling in January 2019.

115705706\V-1

9.5　After the case was remanded to the trial court, the Debtor and Xuming Zhang amended their complaint on July 9, 2019, adding causes of action for conversion and unfair business practices against Jenevein, and naming Doe Defendant 1 as "Soaring Wind Energy, LLC" in an additional cause of action for unjust enrichment.

9.6　On July 11, 2019, Jenevein filed a motion for summary judgment or summary adjudication with regard to all causes of action.

9.7　On November 26, 2019, the trial court granted Jenevein's motion for summary judgment or summary adjudication, except without regard plaintiffs' first cause of action for violation of California Penal Code section 632.

9.8　On September 3, 2019, Soaring Wind filed its demurrer with respect to the cause of action for unjust enrichment.

9.9　On December 12, 2019, the trial court sustained Soaring Wind's demurrer.

9.10　On January 13, 2020, the Debtor and Xuming Zhang filed their second amended complaint against Jenevein and Soaring Wind asserting the same five causes of actions previously asserted.

9.11　On February 23, 2020, Jenevein filed a demurrer to plaintiffs' second amended complaint.

9.12　On March 2, 2020, the Debtor and Xuming Zhang filed a notice of appeal of order dismissing Soaring Wind Energy, LLC.

9.13　On August 5, 2020, the trial court sustained Jenevein's demurrer to plaintiffs' second amended complaint.

9.14　On October 5, 2020, the trial court entered a final judgment in favor of Jenevein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed on October 23, 2020, in Los Angeles, California.

　　　　　　　　　　　　　　　　　　　　/s/ Jinshu Zhang
　　　　　　　　　　　　　　　　　　　　JINSHU ZHANG

115705706\V-1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 601 South Figueroa Street, Suite 2500, Los Angeles, California 90017-5704

A true and correct copy of the foregoing document, entitled (*specify*): DECLARATION OF JINSHU ZHANG IN SUPPORT OF MOTIONS AND APPLICATIONS TO BE FILED ON BEHALF OF THE DEBTOR, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Dare Law #155714  
Office of the United States Trustee  
915 Wilshire Boulevard, Suite 1850  
Los Angeles, CA 90017

Counsel for United States Trustee (LA)  
T: 213 894 4925 / F: 213 894 2603  
E: dare.law@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**:
On , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Lewis T. LeClair #077136  
McKool Smith PC  
300 Crescent Court, Suite 1500  
Dallas, TX 75201-7856

Counsel for Soaring Wind LLC & Tang Energy  
T: 214 978 4984 / F: 214 978 4044  
E: lleclair@mckoolsmith.com

Yue Yin  
ICBC  
388 East Valley Boulevard, Suite 118  
Alhambra, CA 91801-5117

T: 626 457 2263

Internal Revenue Service  
300 North Los Angeles Street  
Los Angeles, CA 90012-3308

T: 800 827 1040

Franchise Tax Board  
300 South Spring Street, Suite 5704  
Los Angeles, CA 90013-1265

T: 800 852 5711

Professor Merritt B. Fox  
845 Jerome L. Green Hall  
Columbia School of Law  
435 West 116th Street  
New York, NY 10027-7297

T: 212 854 9766  
E: mfox1@law.columbia.edu

Connolly Gallagher LLP  
1201 North Market Street, 20th Floor  
Wilmington, DE 19801-1165

T: 302 757 7300

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Case No. 2:20-bk-19043-WB**

*June 2012*                                                                                              **F 9013-3.1.PROOF.SERVICE**

Oscar Estrada  
L.A. County Treasurer & Tax Collector  
P.O. Box 54110  
Los Angeles, CA 90054-0110

T: 213 974 7803  
E: bankruptcy@ttc.lacounty.gov

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Date | Frederick Kalve | Signature |
|------|-----------------|-----------|
|      | *Printed Name*  |           |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Case No. 2:20-bk-19043-WB**

June 2012    F 9013-3.1.PROOF.SERVICE